IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MISTY KAY VEGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 4:12-cv-2679-KOB |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. Introduction

On May 16, 2008, the claimant, Misty Kay Vega, applied for disability insurance benefits under Title II of the Social Security Act, and on May 19, 2008, she applied for supplemental security income under Title XVI of the Social Security Act. (R. 133-139). The claimant alleges disability commencing on September 30, 2006 because of nerves, anxiety, depression, and learning disability.

The Commissioner denied the claims both initially and on reconsideration. (R. 85-89). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on March 26, 2010. (R. 126). In a decision dated April 8, 2010, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, ineligible for disability insurance benefits or supplemental security income. (R. 16-28). On June 6, 2012, the Appeals Council denied the claimant's request for review; consequently, the ALJ's

decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-4). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C.§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. Issues Presented

The claimant presents for review the issue of whether substantial evidence supports the Commissioner's conclusion that the claimant did not meet the requirements of § 12.05(C) Mental Retardation because the claimant was not mentally retarded, but rather has borderline intellectual functioning.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports her factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The court does not review *de novo* the Commissioner's factual determinations, however, but must affirm if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take into account evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV.  Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The claimant has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). If the claimant contends that an impairment equals a listed impairment, the claimant must present evidence describing how the

impairment has such an equivalency. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

Regarding mental impairments, the ALJ must base his evaluation on the "special technique" dictated by the Psychiatric Review Technique Form (PRTF). *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a-(a). The "special technique" requires an evaluation of the impact of the claimant's mental impairment on (1) activities of daily living (ADLs); (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Moore*, 405 F.3d at 1213. Failure to either complete the PRTF and append it to the ALJ's opinion, or to incorporate the PRTF's "mode of analysis" into the ALJ's decision constitutes reversible error. *Moore*, 405 F.3d at 1214.

A finding of disability because of mental retardation under the listings requires a finding that the claimant "(1) ha[s] significantly subaverage general intellectual functioning; (2) ha[s] deficits in adaptive behavior; and (3) ha[s] manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.05. A claimant's mental retardation is sufficiently severe when it meets the requirements of § 12.05A, B, C, *or* D. Under § 12.05C, a claimant must have a valid verbal, performance, or full scale IQ ranging from 60 to 70, and an additional mental or physical impairment imposing an additional work-related limitation on function.

To constitute a disability under § 12.05D, a claimant must have a valid verbal, performance, or full scale IQ ranging from 60 to 70, resulting in at least two of the following:

       (1) marked restriction of activities of daily living; or
       (2) marked difficulties in maintaining social functioning; or
       (3) marked difficulties in maintaining concentration, persistence, or pace; or

(4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05D.

The Eleventh Circuit, however, also has determined that an ALJ is not required to base a finding of mental retardation on the results of an IQ test alone when he evaluates whether a claimant meets the requirements of § 12.05(C). *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *see also Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984) (finding that no case law "requir[es] the Secretary to make a finding of mental retardation based *solely* upon the results of a standardized intelligence test in its determination of mental retardation"). An ALJ is required to base his determination of mental retardation on the combination of intelligence tests and the medical report.

## V. Facts

The claimant had completed the sixth grade and was 33 years old at the time of the administrative hearing. Her past work experience includes nursing home cleaner and various poultry processing assembly line jobs. The claimant alleges that she is unable to work because of nerves, anxiety, depression, and learning disability. (R. 170-171).

### *Mental Limitations*

The claimant sought general medical treatment from Lakeside Medical Clinic multiple times from October 18, 2005 through May 19, 2008. Aside from isolated, episodic illness, results from the claimant's routine physical exams were consistently normal. Beginning with a visit on May 16, 2006, the claimant began complaining of headache, nausea, fatigue, and feeling jittery. She began taking Zoloft, but did not respond well to it, so she began taking Lexapro

instead. On May 19, 2008, the claimant reported that she could not afford Lexapro and had stopped taking it, so the attending physician instructed her to take Paxil. (R. 266-287).

In conjunction with her application for disability benefits, the claimant completed a Function Report – Adult on June 8, 2008. She described her daily activities as preparing her children's breakfast, taking her medication, having a nap, preparing her children's supper, bathing herself and her children, and going to bed. She further described spending ninety minutes cleaning her house and two hours doing laundry. She wrote that she prepares frozen meals and sometimes complete meals, but that she has trouble remembering ingredients and reading instructions. She indicated that she shops for groceries once a week for 45 minutes, and that she has trouble counting and managing her personal finances. She described her hobbies as watching television and talking with her children. (R. 212-219).

Dr. Mary Arnold, the state's psychologist, examined the claimant on two occasions. At the first visit, on June 30, 2008, Dr. Arnold observed that the claimant had unimpaired gait and posture; no overt indicators of pain; clean hygiene and shiny hair; a pleasant and cooperative demeanor; and appropriate behavior. Regarding her mood, Dr. Arnold observed no sign of an impending anxiety attack. Dr. Arnold noted that the claimant was alert and oriented in all spheres; that she understood instructions; and that she was able to perform mental calculations and numerical sequencing. She further noted that the claimant's speech was fluid, her thoughts linear, and her response times regular. Dr. Arnold also noted that the claimant was taking Xanax three times a week, as monitored by her primary care physician. Without formal testing, Dr. Arnold estimated the claimant's IQ to be in the borderline to low average range. Finally, Dr. Arnold diagnosed the claimant with an adjustment disorder and assigned her a GAF of 62. (R.

289-291).

The second time Dr. Arnold examined the claimant was on August 29, 2008, and was for the sole purpose of administering the Wechsler Adult Intelligence Scale-Third Edition.  Dr. Arnold noted that the claimant was cooperative; that no interfering factors existed; and that she deemed the results to be a valid estimate of the claimant's current level of functioning.  Dr. Arnold assigned the claimant a verbal IQ score of 74, a performance IQ score of 70, and a full scale IQ score of 70, indicating a borderline IQ range.  Dr. Arnold noted that the claimant demonstrated neither strengths nor weaknesses, but that she needed assistance managing funds. (R. 294).

At the request of the Disability Determination Service, Dr. Samuel D. Williams, a psychiatrist, completed a Psychiatric Review Technique of the claimant on September 17, 2008. Dr. Williams considered the June 23, 2008 report from Lakeside Clinic, and the June 30, 2008 and August 29, 2008 exam reports from Dr. Arnold.  He also considered information provided by the claimant.  Dr. Williams diagnosed the claimant with borderline intellectual functioning and depression.  Dr. Williams opined that the claimant had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in concentration, persistence, or pace.  He noted that the claimant had no episodes of decompensation of an extended duration.  While acknowledging an inability to resume previous work in a poultry plant, Dr. Williams determined that the claimant's condition was not severe enough to keep her from working.  (R. 82-84, 315-317).

Dr. Williams also completed a Mental Residual Functional Capacity Assessment of the claimant on September 17, 2008.  Dr. Williams opined that the claimant had no significant

limitations in 13 out of 20 work-related activities.  He found that she had only moderate limitations in seven categories, specifically in her ability to understand and carry out detailed instructions, and in her ability to relate well to coworkers and the public.  Dr. Williams also noted that the claimant would be able to maintain attention to a simple task for two hours without special supervision, but would be unable to concentrate for extended periods.  He recommended a flexible daily schedule, rest periods, a roomy work place, and a limited number of familiar coworkers.  Dr. Williams also noted that contact with the public should be limited and criticism non-confronting, and that changes in work setting should be infrequent and gradually introduced.  (R. 320-321).

   The claimant underwent two physical and mental examinations at Marshall Family Health Clinic on May 5, 2009 and May 26, 2009.  Records from both of those exams show that the claimant was alert, anxious, and cooperative, and not in acute distress.  The treatment notes also characterize as appropriate the claimant's insight, her judgment regarding every day activities, and her judgment in social situations.  The notes also show that the claimant's thought content was normal and that she was able to perform basic computations and apply abstract reasoning.  Further, results from thyroid, chest and lung, and cardiovascular exams were normal.  (R. 225-228).

   In an undated Disability Report – Adult, the claimant described her condition as "[n]erves, anxiety, depression, learning disability."  She also wrote that she is easily nervous and paranoid, especially around coworkers, and that these feelings intensified until she quit her job.  Additionally, the claimant contended that this condition, as well as her limited literacy, precludes her both from getting better work and from working at all.  (R. 169-175).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing on March 26, 2010 before an ALJ. (R. 57).

The claimant testified that she lives independently with her two children, but that her mother participates in childcare. She confirmed that she daily prepares her children's breakfast and supper, takes "anxiety" medication, bathes, makes sure that the children bathe, cleans her house, and does the laundry. The ALJ characterized her as "a fine mother," and the claimant agreed. (R. 62, 69).

The claimant also indicated that she goes outside every day for an hour. She explained that her 12-year-old daughter likes to ride her bicycle, and that the claimant supervises, because she is afraid "something is going to happen." (R. 63). She said she goes to church occasionally, and drives the 10 mile distance. She further stated that she participates in a weekly, two hour reading club at school with her daughter. (R. 67-68).

The claimant then described her past work experience in poultry processing. She said that she worked in various capacities: eviscerating, deboning, and trimming birds, as well as cleaning machines. She testified that she has no problem standing six out of eight hours, or even all day. She said also that she gets "real depressed" being around others and relating to coworkers, and that she prefers to keep to herself and stay at home. She said that she cannot handle workplace criticism. The claimant testified that she quit work in May of 2008 because she was depressed and afraid that her hospitalized grandmother might die. (R. 64-65).

The claimant then explained that when she feels nervous and uncomfortable, she starts shaking and wants to cry. She stated that she has crying spells approximately twice a week, and

that they are usually triggered by family turmoil, like when one of her children is unwell. She conceded, however, that "just anything" could cause the crying spells. (R. 70-71)

The claimant then testified as to her educational limitations. She said she was barely literate, and could only read words like "the" and "is." She said that she would be unable to run a cash register because she can neither add nor subtract. (R. 65).

The ALJ next questioned Donald Parsons, a vocational expert. The ALJ posed a hypothetical to Mr. Parsons for an individual aged 49 with the following limitations: has a limited education; able to understand, remember, and carry out simple, but not detailed, tasks; can follow simple directions and find locations; can remain at attention for simple tasks for two hours without special supervision; cannot concentrate for extended periods; and needs a flexible daily schedule and customary rest periods in a roomy workplace. (R. 75-76).

The vocational expert characterized that work description as "simple and routine" work, and stated that such work would be compatible with the claimant's past work in poultry processing. (R. 76).

The ALJ then clarified for the vocational expert that he understands "flexible" to mean occasional days off from work for illness or family emergency, but not days off simply because of a disinterest in working. The vocational expert responded that production line work, such as that work the claimant previously performed, would not be flexible in any way. The vocational expert further stated that the need for flexibility would preclude work in any assembly line, because the work environment is controlled, and absent workers need to be replaced. (R. 76-77).

The vocational expert testified, however, that even considering the flexibility requirement, jobs would be available for the hypothetical individual, including night cleaner in

offices and healthcare facilities, with 40,400 such jobs existing in Alabama 240,000 nationally; kitchen helper, with 4,000 such jobs in Alabama and 380,000 nationally; and hospital cleaner, where 1,000 jobs exist in the state and 77,000 nationwide. (77-78).

The ALJ concluded the hearing conceding that the claimant had an apparent adjustment disorder and some mental issues. (R. 79).

*The ALJ's Decision*

On April 8, 2010, the ALJ issued a decision that the claimant was not disabled under the Social Security Act. The ALJ found that the claimant had not engaged in substantial gainful activity since September 30, 2006, the alleged onset date. (R. 20). The ALJ further found that the claimant had the severe impairment of borderline intelligence, and that she had no significant physical problems. (R. 15).

In assessing the claimant's mental impairment, the ALJ found evidence of only mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Additionally, he found no evidence of episodes of decompensation of an extended duration. The ALJ, therefore, concluded that the claimant's impairments, when considered individually or in combination, do not meet or equal a listing. (R. 23).

In making his determination, the ALJ gave considerable weight to the opinion of Dr. Williams, the DDS's psychiatrist, because the ALJ found his opinion consistent with the evidence in the record and the claimant's testimony at the hearing. The ALJ also considered the claimant's testimony that she takes care of herself, her daughters, and her home. The claimant testified that she drives, shops, cooks two meals a day, and does household chores; that,

recreationally, she watches television and spends time talking with others; and that, physically, she has no problem standing all day long, but does have problems being around others. (R. 23).

The ALJ then found that, despite her impairment, the claimant has the residual functional capacity to perform work at all exertional levels, but with several non-exertional limitations. He noted specifically that the claimant can understand, remember, and carry out simple, but not detailed tasks; that she can find locations and follow simple directions; and that she can maintain attention to a simple task for two hours without supervision, but that she cannot concentrate for extended periods. He also found that she will need a flexible daily schedule, customary rest periods, roomy work places, and only a few familiar coworkers. The ALJ noted further that the claimant's contact with the public should be casual and criticism non-confronting; and that changes in the work setting should be infrequent and gradually introduced. (R. 23).

The ALJ based his conclusions on evidence in the record, particularly Dr. Williams's opinion in his September 17, 2008 evaluation of the claimant using the Psychiatric Review Technique Form. The ALJ noted that Dr. Williams found the claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. The ALJ's findings of the claimant's residual functional capacity mirror the opinion of Dr. Williams. (R. 23-24).

The ALJ also considered the records of Dr. Arnold, the state's psychologist, of her June 30, 2008 and August 29, 2008 psychological evaluations of the claimant. The ALJ noted that Dr. Arnold's reports characterized the claimant as being neatly dressed with good hygiene; having a pleasant and cooperative demeanor; being alert and oriented in all spheres; understanding

instructions and performing mental calculations; having no problems thinking abstractly, processing thoughts, or using judgment; and living independently, caring for her children, and managing her household and her personal finances. The ALJ also noted that Dr. Arnold assigned the claimant a GAF of 62. (R. 23-24)

Regarding her ability to work, the ALJ found that the claimant had a limited education and was able to communicate in English; that her past relevant work was unskilled and, therefore, transferability of job skills was not an issue; and that those facts combined with her residual functional capacity availed her of jobs existing in significant numbers in the national economy. (R. 24).

The ALJ explained that, at the hearing, he posed to the vocational expert hypothetical qualifications for an individual that matched the claimant's age, education, work experience, and residual functional capacity. The ALJ noted that the vocational expert replied that a range of work existed in the national economy for such an individual. The ALJ, therefore, concluded that the claimant would be capable of making a successful adjustment to working, that jobs did exist in significant numbers for her in the national economy, and that she is, therefore, not disabled. (R. 25).

*Discussion*

*Substantial evidence supports the Commissioner's conclusion that the claimant did not meet the requirements of 12.05(C) Mental Retardation because the claimant was not mentally retarded, but rather borderline intellectually functioning.*

The claimant argues that the ALJ erred by rejecting the claimant's alleged disability under § 12.05(C), contending that his decision was not supported by substantial evidence. The court

disagrees and finds that the ALJ properly found that the claimant was not disabled under § 12.05(C).

As to mental impairments, the ALJ must base his evaluation on the "special technique" dictated by the Psychiatric Review Technique Form (PRTF). *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a-(a). The "special technique" requires an evaluation of the impact of the claimant's mental impairment on (1) activities of daily living (ADLs); (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Moore*, 405 F.3d at 1213. Failure to either complete the PRTF and append it to the ALJ's opinion, or to incorporate the PRTF's "mode of analysis" into the ALJ's decision constitutes reversible error. *Moore*, 405 F.3d at 1214.

In this case, the ALJ considered the results of the Psychiatric Review Technique Form, as completed by Dr. Williams on September 17, 2008. The ALJ gave considerable weight to the opinion of Dr. Williams that (1) the claimant had mild restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. The ALJ found that Dr. Williams's opinion was consistent with the record, specifically the claimant's statements both to Dr. Arnold in 2008 and to the ALJ at the hearing, where she described living independently, caring for her children, and managing her household and her personal finances. Further, the ALJ noted that Dr. Arnold assigned the claimant a GAF of 62, indicative of mild limitations.

Additionally, a finding of disability for mental retardation under the listings requires a finding that the claimant "(1) ha[s] significantly subaverage general intellectual functioning; (2)

ha[s] deficits in adaptive behavior; and (3) ha[s] manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.05. A claimant's mental retardation is sufficiently severe when it meets the requirements of § 12.05A, B, C, *or* D. Under § 12.05C, a claimant must have a valid verbal, performance, or full scale IQ ranging from 60 to 70, and an additional mental or physical impairment imposing an additional work-related limitation on function. Under § 12.05D, a claimant must have a valid verbal, performance, or full scale IQ ranging from 60 to 70, resulting in at least two of the following:

> (1) marked restriction of activities of daily living; or
> (2) marked difficulties in maintaining social functioning; or
> (3) marked difficulties in maintaining concentration, persistence, or pace; or
> (4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05D.

The ALJ noted that both Dr. Arnold and Dr. Williams opined that the claimant's IQ of 70 places her in the borderline to low average range of intelligence. As an IQ score in that range is not enough to qualify as disabled under § 12.05(C), the ALJ must look for other evidence in the record to bolster the claimant's allegations. *Popp*, 779 F.2d at 1499. The ALJ did, in fact, consider the results of the intelligence test in light of other evidence in the record. He considered the claimant's statements regarding her independent living, caring for herself and her children, and managing her household and personal finances. He also considered the opinions of Dr. Arnold and Dr. Williams that the claimant had, at most, moderate limitations, and that she was borderline functioning. Finally, the ALJ found no evidence in the record that the claimant has any other marked additional mental or physical impairment imposing an additional work-related

15

limitation on function necessary to qualify for a listing under § 12.05(C). He found that both Dr. Arnold and Dr. Williams found no more than moderate mental limitations, and that both her medical records and the claimant's own statements supported his conclusions that the claimant had no physical impairment.

This court finds that the ALJ correctly found that the claimant was not disabled under § 12.05(C), and that substantial evidence supports his conclusion.

## VI. Conclusion

For the reasons as stated, this court concludes that the ALJ applied the proper legal standards and that substantial evidence supports his decision. Therefore, this court finds that the decision of the Commissioner is due to be AFFIRMED.

The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 18th day of December, 2013.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE